**COPY**

CORTLIN H. LANNIN (State Bar No. 266488)
LESLIE N. HARVEY (State Bar No. 241203)
  (admission to C.D. Cal. pending)
COVINGTON & BURLING LLP
One Front Street
San Francisco, California 94111
Telephone:  (415) 591-6000
Facsimile:  (415) 591-6091
Email:  clannin@cov.com

Attorneys for Plaintiff
THE AMERICAN AUTOMOBILE
ASSOCIATION, INC.

FILED
2011 JAN 20 AM 10: 54
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY: _____

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

THE AMERICAN AUTOMOBILE
ASSOCIATION, INC.,

　　Plaintiff,

　　v.

GALACAUS, INC. a/k/a TRELLIAN LLC;
TRELLIAN PTY LIMITED; TRANSURE
ENTERPRISE LTD; DAVID SMITH; and
ABOVE.COM DOMAIN PRIVACY,

　　Defendants.

Civil Case No.: CV 11 00587 DSF (JCGx)

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

　　Plaintiff The American Automobile Association, Inc. ("AAA") brings this Complaint for injunctive, monetary, and other relief against Defendants Galacaus, Inc. ("Galacaus"), a/k/a Trellian LLC, Trellian Pty Limited (collectively "the Trellian Defendants"), Transure Enterprise Ltd, David Smith, and Above.com Domain Privacy ("Above.com") (collectively "Defendants"). AAA alleges as follows:

### NATURE OF ACTION

　　1.　　This action arises out of Defendants' knowing, willful, and repeated violation of AAA's rights in its famous and distinctive AAA trademarks (the "AAA Marks").

COMPLAINT

Defendants have used and continue to use the AAA Marks in commerce without authorization and with full knowledge that they are not authorized to use those Marks.

2.      Specifically, this Complaint challenges Defendants' pattern and practice of widespread registration and willful and unlawful use of domain names that infringe the AAA Marks. Defendants have profited from exploitation of the AAA Marks (for example, by redirecting those who click on an infringing domain name to pay-per-click websites with links to products and services that compete with those offered in connection with the AAA Marks), and they have created aliases as part of their efforts to shield their registration of domain names that infringe upon those Marks (and the famous trademarks of others) and to avoid the legal consequences of their actions. Defendants also assist the infringement efforts of others—again, for Defendants' own profit.

3.      AAA's prior attempts to remedy these wrongs through the domain name dispute arbitration process have proven futile. *See Am. Auto. Ass'n, Inc. v. Above.com Domain Privacy / Transure Enter. Ltd*, WIPO Case No. D2010-0565 (June 1, 2010) (ordering Defendants to transfer the domain name AAATRAVELCLUB.COM to AAA). Indeed, Defendants' conduct persists in the face of over 30 World Intellectual Property Organization ("WIPO")[1] decisions concluding that Defendants have engaged in unlawful cybersquatting practices and ordering the transfer of nearly 100 infringing domains to their lawful trademark owners.

4.      AAA therefore brings this action for trademark infringement, false designation of origin, and unfair competition in violation of Sections 32 and 43(a) of the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. §§ 1114, 1125(a), and California common law; for trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), California state law, California Business & Professions Code § 14247, and common law; for

---

[1] WIPO is an agency of the United Nations. The Internet Corporation for Assigned Names and Numbers ("ICANN") has rested decision-making authority over domain name disputes with WIPO's Arbitration and Media Center under the Uniform Domain Name Dispute Resolution Policy ("UDRP").

COMPLAINT                                            2

trademark cyberpiracy in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); and for unfair competition in violation of the California Unfair Competition Law, California Business & Professions Code § 17200, *et seq.* AAA seeks injunctive relief, monetary damages, restitution, and all other appropriate relief, including an order enjoining Defendants from using the AAA Marks and requiring Defendants to transfer to AAA all domain names in Defendants' control that infringe on the AAA Marks (the "Infringing Domain Names").

5. Defendants' unlawful use of the AAA Marks is likely to cause—and may have already caused—consumers to believe, erroneously, that AAA has endorsed the websites hosted by the Infringing Domain Names and/or the products and services offered therein, jeopardizing the goodwill associated with AAA's Marks, confusing those consumers seeking the reliable and dependable products and services of AAA, and unjustly enriching Defendants.

6. Defendants' unlawful use of the Infringing Domain Names has lessened the capacity of AAA's famous AAA Marks to identify and distinguish the products and services AAA provides under those Marks and thus diluted the distinctive quality of the Marks. Furthermore, Defendants' use of the famous and distinctive AAA Marks has tarnished and harmed the goodwill and reputation of the AAA Marks.

7. On information and belief, Defendants have profited from the unauthorized use of the AAA Marks and have made unauthorized commercial use of the AAA Marks in California and elsewhere to their benefit and to the detriment of AAA and of consumers, in violation of the laws identified above.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction under 15 U.S.C. §§ 1121 and 1125 and under 28 U.S.C. §§ 1331 and 1338 in that this case arises under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.* The Court has jurisdiction over the state law claims under 28 U.S.C. §§ 1338(b) and 1367(a).

9. Venue is proper under 28 U.S.C. §§ 1391(b) and (c). On information and belief, a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California. Specifically, on information and belief, Defendants are subject to

1  personal jurisdiction within the Central District of California because they have conducted
2  business in, and reside in, this District.

### PARTIES

3. Plaintiff AAA is a not-for-profit, non-stock corporation organized and existing under the laws of Connecticut, with its principal place of business in Heathrow, Florida. AAA provides its more than 50 million members with a wide variety of products and services throughout the United States and Canada, including in California. AAA's services include travel and automobile products and services, financial advice, insurance and warranty coverage, and discounts. AAA provides its products and services through the many local AAA member clubs that it endorses.

4. On information and belief, Defendant Galacaus is a corporation organized and existing under the laws of California, located at 879 W. 190th St. Suite 400, Gardena, California 90248. On further information and belief, Galacaus is the same entity as each of the Trellian Defendants (defined below) and owns and controls all businesses associated with the Trellian Defendants. Moreover, on further information and belief, Galacaus controls Above.com, the registrant for at least one of the Infringing Domain Names in the WHOIS registry.

5. On information and belief, Defendant Trellian, LLC is a former California partnership located at 615 N. Nash St. Suite 208B, El Segundo, CA 90245. On information and belief, Trellian, LLC is an alias of Galacaus.

6. On information and belief, Defendant Trellian Pty Limited is an Australian proprietary company located at 8 East Concourse, Beaumaris, VIC 3193, Australia. On information and belief, Trellian Pty Limited is an alias of Galacaus.

7. On information and belief, Defendant Above.com is an entity used by Galacaus and Defendant Trellian, LLC and Trellian Pty Limited (collectively, the "Trellian Defendants") as a "proxy" to conceal ownership of domain names and websites controlled by Galacaus. The address for Above.com listed in the WHOIS Records for at least one of the Infringing Domain Names, WWW.AAAAUTOCARRIERS.COM, is the same as the principal

address for Trellian Pty Limited which, as described above, is an alias of Galacaus. Above.com is the registrant of WWW.AAAAUTOCARRIERS.COM, according to the WHOIS registry.

15. On information and belief, Defendant Transure Enterprise Ltd purports to be located in Tortola, Virgin Islands, Overseas Territory of the United Kingdom of Great Britain and Northern Ireland. On further information and belief, Defendant Transure Enterprise Ltd is actually an entity used by Galacaus and the Trellian Defendants to register domain names and to conceal their true ownership.

16. Defendant David Smith is a man of unknown origin. On information and belief, Mr. Smith is an alias of Galacaus used by Defendants to respond to trademark owners who contact Above.com concerning domain name disputes.

17. On information and belief, Galacaus is an alias for and/or controls the Trellian Defendants, Transure Enterprise Ltd, David Smith, and Above.com for all purposes relevant to this Complaint.

## FACTS ENTITLING PLAINTIFF TO RELIEF

### A. AAA's Widespread and Substantial Trademark Use

18. Since its founding over a century ago, AAA has enjoyed a reputation as one of the world's premier client service organizations. That reputation is largely based upon the quality and reliability of the many products and services it offers through its AAA local clubs.

19. Although its original focus was on combating unfair automobile laws and campaigning for better roads and more reliable vehicles, AAA quickly expanded its charter. It established itself almost immediately as an advocate for travel safety and road improvement and became associated with reliable travel-related information. Today AAA offers a broad range of products and services, including, but also going beyond, automobiles and travel.

20. AAA has invested significant resources to develop and foster the reputation, recognition, and goodwill associated with its products and services. AAA's efforts include extensive advertising campaigns and promotional efforts along with AAA's commitment to quality and reliability to maintain that goodwill.

21.     For decades, AAA has used the AAA Marks and logo designs in interstate commerce to identify a wide range of products and services. Only those businesses that are part of AAA's selective network of approved service providers are authorized to use or display the AAA Marks. Consequently, AAA members and the public know that local businesses displaying one of AAA's Marks are selected only if they maintain excellent reputations for quality, integrity, reliability, and service.

22.     AAA and its local clubs have registered many AAA-related domain names and maintain several Internet websites through which AAA members and members of the general public may obtain information and, in some cases, purchase or use the products and services (the "AAA Websites").

23.     The AAA Websites are created and operated, in part, for purposes of attracting potential members and customers, encouraging their interest in AAA and its local clubs, and offering products and services to customers in the United States.

24.     As a result of AAA's history and experience providing high quality products and services through the AAA local clubs, and as a result of the continuous and extensive advertising, promotion, and sales of products and services under the AAA Marks, those trademarks have acquired substantial value and fame in the United States and throughout the World.

25.     Further, the AAA Marks are widely recognized by consumers in this country and abroad and have acquired enormous goodwill as trademarks identifying high quality and reliable products and services. Indeed, the AAA Marks are distinctive such that consumers recognize that goods and services marketed under the AAA Marks originate with, or are approved or endorsed by, AAA and the AAA local clubs.

26.     AAA has registered with the United States Patent and Trademark Office more than 70 of its AAA Marks, which AAA has used since at least 1902 in connection with the broad array of products and services offered to its members. The federal registrations Defendants are violating are:

A. Reg. No. 829,265 for the AAA Mark, used in connection with automobile association services rendered to motor vehicle owners, motorists, and travelers, including placing insurance with underwriters;

B. Reg. No. 2,158,654, for the AAA Mark & Design used in connection with a variety of automobile related goods and services, among others; and

C. Reg. No. 3,316,227, for the AAA Mark & Design, used in connection with indicating membership in an automobile club.

Copies of the registration certificates for the above marks are available via the United States Patent and Trademark Office website: <http://www.uspto.gov>.

27. Pursuant to 15 U.S.C. § 1057(b), the registration certificates for the AAA trademarks, including the marks identified in paragraph 25, constitute *prima facie* evidence of the validity of those registrations, of AAA's ownership of the trademarks set forth therein, and of AAA's exclusive right to use those trademarks in commerce and in connection with the products and services specified in the registration certificates.

B. **Defendants' Actions**

*1. Defendants' Pattern and Practice of Infringement*

28. Defendants have a "well-established history of abusing the trademark rights of others." *D-Market Elektronik Hizmetler Ve Ticaret Anonim Şirketi v. Above.com Domain Privacy/Transure Enter. Ltd.*, WIPO Case No. D2010-0428 (May 18, 2010). Defendants have operated through a network of affiliates and aliases to avoid liability for what one WIPO panel described as "serial cybersquatt[ing]" *Id.*

29. Indeed, between April 2008 and April 2010, Above.com was found to have violated the Uniform Domain Name Dispute Resolution Policy in 38 separate proceedings before WIPO.

30. Several arbitration panels have detailed the connections between Defendants' aliases and explained their use in Defendants' infringement schemes. Most notably, at least 29 WIPO panel decisions address the relationship between Above.com and Transure Enterprise Ltd. (in most instances, potential complainants initially contacted

COMPLAINT 7

Above.com as the registrant listed in WHOIS records for the relevant domain name, but were informed by the registrar that the true registrant was Transure Enterprise Ltd.). *See, e.g., Revlon Consumer Products Corp. v. Above.com Domain Privacy / Host Master, Transure Enter. Ltd, David Smith*, WIPO Case No. D2010-1497 (Nov. 5, 2010); *TRS Quality, Inc. v. Above.com Domain Privacy/Transure Enter. Ltd*, WIPO Case No. D2009-0630 (July 3, 2009). In several cases, the WIPO panel decision discusses the receipt by complainants of emails from "David Smith" or "D. Smith" offering to sell the relevant domain names. *See, e.g., LEGO Juris A/S v. Shu Lin/Transure Enter. Ltd/Above.com Domain Privacy*, WIPO Case No. D2010-1648 (Nov. 19, 2010); *LEGO Juris A/S v. DomainPark Ltd, David Smith, Above.com Domain Privacy, Transure Enter. Ltd, Host master*, WIPO Case No. D2010-0138 (March 10, 2010).

31. Defendants' unlawful conduct also has been challenged in at least one other court proceeding. *See Microsoft Corp. v. Trellian Pty. Ltd.*, No. C08-0776-JPD (W.D. Wash. dismissed Sept. 8, 2004) (asserting claims virtually identical to those asserted here, including trademark infringement, false designation of origin and unfair competition, cyber-squatting, and violation of Washington common law). The case was dismissed with prejudice as part of a settlement between the parties. *See id.*

       2.    *Defendants' Internet Business*

32. In addition to registering and selling domain names, Defendants maintain an Internet and software business that instructs customers how to register infringing domain names that divert Internet users to websites hosting pay-per-click advertisements.

33. Specifically, Defendants' "Keyword Discovery" program allows customers to collect the keywords and search phrases that drive the most traffic to their competitors' websites. The program is presented as a way to help customers take traffic away from their competitors and "maximize [their] pay per click campaigns." Such campaigns typically involve registering and using confusingly similar domain names to redirect Internet users looking for a product or service to a website hosting pay-per-click advertisements for competing products or services.

COMPLAINT         8

34. In addition, Defendants offer a "Domain Researcher Tool" that helps would-be infringers find potentially high-traffic domain names that are available for registration. This feature uses popular keyword-search data to help purchasers choose domain names that "are already in the minds of potential customers," i.e., domain names that can be used to exploit the recognition and goodwill of competitors.

### C. Defendants' Unlawful Use of Plaintiff's AAA Marks

35. AAA has never authorized Defendants to use the AAA Marks.

36. Nevertheless, as set forth below, Defendants have knowingly and willfully violated AAA's rights in the famous and distinctive AAA Marks by using in commerce the AAA Marks and have damaged, or are likely to damage, the reputation, recognition, and goodwill associated with the famous and distinctive AAA Marks.

*1. Defendants' Unlawful Use*

37. Defendants' pattern and practice of cybersquatting has already injured and, without this Court's intervention, will continue to injure AAA.

38. Defendants are registrants of over 30,000 domain names, many of which infringe on the rights of trademark holders, including AAA. Because Defendants operate under a series of aliases, AAA cannot quantify the number of Infringing Domain Names in Defendants' control. AAA contends, on information and belief, that Defendants have registered, used, and/or controlled a large number of domain names that incorporate the AAA Marks with a bad faith intent to profit.

39. AAA first became aware of Defendants' infringements in 2009, when AAA learned that Defendants had registered the domain name AAATRAVELCLUB.COM to host pay-per-click links to third-party websites offering travel services that compete directly with those of AAA. A WIPO panel concluded that Defendants' "conduct is inherently misleading, and the use of a confusingly similar domain name to lure Internet users to a site hosting links to providers of competing products or services is *prima facie* evidence of bad faith." *See Am. Auto. Ass'n, Inc. v. Above.com Domain Privacy / Transure Enter. Ltd.*, WIPO Case No. D2010-0565 (June 1, 2010). The panel ordered transfer of the domain name to AAA.

COMPLAINT                                    9

40. Notwithstanding the WIPO panel decision, Defendants have continued their pattern and practice of registering and using domain names that infringe upon the AAA Marks. For example, Defendants have registered the domain name AAAAUTOCARRIERS.COM to host pay-per-click websites that direct Internet users to automobile insurance offers which directly compete with those associated with the AAA Marks.

41. On information and belief, Defendants' unauthorized use of the Infringing Domain Names has been and continues to be of commercial value to Defendants.

### 2. *Defendants' Failure to Comply with AAA's Notices*

42. On April 6, 2010, shortly after AAA learned that Defendants had registered the domain name AAAAUTOCARRIERS.COM, AAA sent a letter by email and certified mail to Above.com, the registrant listed in the WHOIS records for the domain name. The letter informed Defendants that the unauthorized use of the AAA Marks violates the Lanham Act as well as state statutes and common law and demanded that Defendants cease all use of the AAA Marks and either cancel the registration or transfer the domain name to AAA.

43. On April 8, 2010, AAA received an email from "David Smith" offering to sell the AAAAUTOCARRIERS.COM domain name to AAA for $500.

44. That same day, AAA rejected the offer. Instead, AAA offered to reimburse the registrant for the out-of-pocket expenses associated with registering the domain name, which AAA estimated to be $10 -- if the domain name was transferred immediately to AAA.

45. Moreover, AAA warned that if it did not receive a response by April 22, AAA would proceed as necessary to protect its trademark rights. AAA received no further response.

46. Despite having actual notice that their continued unauthorized use of the AAA Marks constitutes actionable trademark infringement, false designation of origin, trademark dilution, cyberpiracy, and unfair competition, Defendants continue to use the AAA Marks and continue to benefit from their unauthorized use.

47. Defendants' continued unauthorized use of the AAA Marks conveys to consumers and members of the general public the false impression that the websites associated with Defendants' domain names are sponsored, approved, or endorsed by AAA.

48. On information and belief, Defendants' use of the AAA Marks is of commercial value to them.

49. Plaintiff's AAA Marks are famous and distinctive, became famous and distinctive before Defendants began their unauthorized use, and are entitled to a broad scope of protection. Defendants' unauthorized use lessens the capacity of Plaintiff's AAA Marks to identify and distinguish the products and services provided or endorsed by, or affiliated with, AAA under the AAA Marks, and thus dilutes the distinctive quality of the Marks.

50. On information and belief, Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

51. For the foregoing reasons, Defendants' unlawful conduct has caused and likely will continue to cause injury to AAA and to the goodwill and value of its AAA Marks.

## FIRST CLAIM FOR RELIEF:
## FEDERAL TRADEMARK INFRINGEMENT
## (LANHAM ACT § 32, 15 U.S.C. § 1114)

52. AAA repeats and realleges the allegations set forth in paragraphs 1-51 above.

53. Defendants' unauthorized use of the AAA Marks violates Section 32 of the Lanham Act, 15 U.S.C. § 1114, because such conduct constitutes willful and deliberate use in commerce of reproductions, copies and/or colorable imitations of AAA's federally registered AAA Marks in connection with the sale, offering for sale, distribution, and advertising of Defendants' products and services in a manner likely to cause confusion, mistake, and deception.

54. Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

55. Defendants' unlawful conduct has irreparably damaged AAA, and it has no adequate remedy at law. Unless enjoined, Defendants will continue the unlawful conduct, further injuring AAA and confusing the public.

56. On information and belief, Defendants have received substantial revenues and substantial profits as a result of their unlawful conduct, to which Defendants are not entitled, and AAA has also suffered damages as a result of such unlawful conduct for which Defendants are responsible.

## SECOND CLAIM FOR RELIEF:
## FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION
## (LANHAM ACT § 43(a), 15 U.S.C. § 1125(a))

57. AAA repeats and realleges the allegations set forth in paragraphs 1-56 above.

58. Defendants' unauthorized use of the AAA Marks violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants willfully and deliberately use in commerce words, terms, names, and/or false designations of origin that likely caused confusion, mistake, and deception as to the origin, sponsorship, or approval by AAA of services promoted by Defendants. This conduct constitutes unfair competition and infringement of Plaintiff's AAA Marks.

59. Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

60. Defendants' unlawful conduct has irreparably damaged AAA, and it has no adequate remedy at law. Unless enjoined, Defendants will continue the unlawful conduct, further injuring AAA and confusing the public.

61. On information and belief, Defendants have received substantial revenues and substantial profits as a result of their unlawful conduct, to which Defendants are not entitled, and AAA has also suffered damages as a result of such unlawful conduct for which Defendants are responsible.

## THIRD CLAIM FOR RELIEF:
## FEDERAL TRADEMARK DILUTION
## (LANHAM ACT § 43(c), 15 U.S.C. § 1125(c))

62. AAA repeats and realleges the allegations set forth in paragraphs 1-61 above.

63. Defendants' unauthorized use of the AAA Marks violates Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Defendants' use, which commenced after Plaintiff's AAA Marks became famous, is intended to derive a commercial benefit from the value and goodwill associated with the AAA Marks and has caused dilution of the distinctive quality of the Marks. In addition, Defendants' use of the AAA Marks is likely to cause dilution by tarnishment by harming the reputation of the famous AAA Marks.

64. Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

65. Defendants' unlawful conduct has irreparably damaged AAA, and it has no adequate remedy at law. Unless enjoined, Defendants will continue the unlawful conduct, further injuring AAA and confusing the public.

## FOURTH CLAIM FOR RELIEF:
## FEDERAL TRADEMARK CYBERPIRACY
## (LANHAM ACT § 43(d), 15 U.S.C. § 1125(d))

66. AAA repeats and realleges that allegations set forth in paragraphs 1-65 above.

67. Defendants' unauthorized registration and use of the Infringing Domain Names violates AAA's rights under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d), because: (i) Plaintiff is the owner of the AAA Marks, which are registered in the United States Patent and Trademark Office and protected under the Lanham Act, 15 U.S.C. §§ 43(a), (c), and (d); (ii) Defendants registered, trafficked in, and/or used the Infringing Domain Names with a bad faith intent to profit from AAA's already famous and distinctive AAA Marks; (iii) the Infringing Domain Names are confusingly similar to Plaintiff's AAA Marks; and (iv) Plaintiff's

1  AAA Marks were distinctive and famous at the time of the registration of the Infringing Domain
2  Names.

3  68. Defendants' unlawful conduct as set forth herein has been and continues
4  to be willful, deliberate, and in bad faith.

5  69. Defendants' violation of the statute has caused and will continue to cause
6  irreparable damage to AAA, for which AAA has no adequate remedy at law. Unless enjoined,
7  Defendants will continue to use the AAA Marks and Infringing Domain Names, further injuring
8  AAA and confusing the public.

9  70. On information and belief, Defendants have received substantial revenues
10 and substantial profits as a result of their infringing uses, to which Defendants are not entitled,
11 and AAA has also suffered damages as a result of the infringing uses, for which Defendants are
12 responsible.

### FIFTH CLAIM FOR RELIEF:
### CALIFORNIA TRADEMARK DILUTION
### (CAL. BUS. & PROF. CODE § 14247)

16 71. AAA repeats and realleges the allegations set forth in paragraphs 1-70
17 above.

18 72. Defendants' unauthorized use of the AAA Marks, which commenced
19 after Plaintiff's AAA Marks became famous, violate California Business & Professions Code
20 Section 14247. Defendants' unauthorized use creates a likelihood of association with Plaintiff's
21 famous AAA Marks because the use is identical, or nearly identical, to Plaintiff's famous marks.
22 Defendants' acts are likely to cause dilution by blurring by impairing the distinctive quality of
23 Plaintiff's famous AAA Marks. In addition, Defendants' use of the AAA Marks is likely to
24 cause dilution by tarnishment by harming the reputation of the famous AAA Marks.
25 Specifically, Defendants' continued use of the AAA Marks to designate and advertise their
26 business that is not authorized by AAA may harm consumers' opinions of, and reliance on,
27 AAA's Marks, if the goods and services do not satisfy AAA's exacting criteria for quality and
28 reliability.

73. Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

74. Defendants' violation of the statute has caused and will continue to cause irreparable damage to AAA, for which AAA has no adequate remedy at law. Unless enjoined, Defendants will continue to use the AAA Marks, further injuring AAA and confusing the public.

## SIXTH CLAIM FOR RELIEF:
## UNFAIR COMPETITION BY INFRINGEMENT OF COMMON LAW RIGHTS

75. AAA repeats and realleges the allegations set forth in paragraphs 1-74 above.

76. Defendants' unauthorized use of the AAA Marks constitutes unfair competition and an infringement of AAA's common law rights in the AAA Marks because AAA is the prior user of the AAA Marks, and Defendants' willful and deliberate use of the AAA Marks in commerce is likely to cause, and may have already caused, confusion, mistake, and deception as to the origin, sponsorship, or approval by AAA of the products and services provided by Defendants.

77. Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

78. Defendants' unlawful conduct has and will continue to cause irreparable damage to AAA, for which AAA has no adequate remedy at law. Unless enjoined, Defendants will continue to use the AAA Marks, further injuring AAA and confusing the public.

79. On information and belief, Defendants have received substantial revenues and substantial profits as a result of their unlawful conduct, to which Defendants are not entitled, and AAA has also suffered damages as a result of such unlawful conduct for which Defendants are responsible.

## SEVENTH CLAIM FOR RELIEF:

## COMMON LAW TRADEMARK DILUTION

80. AAA repeats and realleges the allegations set forth in paragraphs 1-79 above.

81. Defendants' unauthorized use of the AAA Marks, which commenced after Plaintiff's AAA Marks became famous, violates the common law of California in that Defendants' uses of the AAA Marks create a likelihood of association with Plaintiff's famous AAA Marks because they are identical to, or nearly identical to, Plaintiff's famous marks. Defendants' acts are likely to cause dilution by blurring by impairing the distinctive quality of Plaintiff's famous AAA Marks. Moreover, Defendants' use of the AAA Marks in commerce is likely to cause dilution by tarnishment. Specifically, Defendants' continued use of the AAA Marks to designate and advertise their business that is not authorized by AAA may harm consumers' opinions of, and reliance on, AAA's Marks if the goods and services do not satisfy AAA's exacting criteria for quality and reliability.

82. Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

83. Defendants' violation of the common law of California has caused and will continue to cause irreparable damage to AAA, for which AAA has no adequate remedy at law. Unless enjoined, Defendants will continue to use the AAA Marks, further injuring AAA and confusing the public.

## EIGHTH CLAIM FOR RELIEF:

## CALIFORNIA UNFAIR COMPETITION LAW

## (CAL. BUS. & PROF. CODE § 17200)

84. AAA repeats and realleges the allegations set forth in paragraphs 1-83 above.

85. Defendants' unauthorized use violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, because it constitutes unfair, unlawful, and fraudulent conduct.

86. Defendants' conduct is unfair in violation of Section 17200 because it allows Defendants to benefit unjustly by virtue of the goodwill and positive reputation that members of the general public associate with AAA and AAA's goods and services. As described herein, and on information and belief, Defendants have violated, and continue to violate, AAA's rights in the AAA Marks in order to enjoy the commercial benefits derived there from.

87. Defendants' conduct is unlawful in violation of Section 17200 because it violates, among others, Sections 32, 43(a), and 43(c) of the Federal Trademark Act ("Lanham Act"), 15 U.S.C. § 1114, 1125(a) and (c), California Business & Professions Code Section 14247, and California common law as described above.

88. Defendants' conduct is fraudulent in violation of Section 17200 because this conduct is likely to deceive, and may have already deceived, the general public as to whether the services on the websites hosted by the Infringing Domain Names are approved or endorsed by, or are otherwise affiliated with, AAA. As a direct and proximate result of Defendants' unauthorized use of the AAA Marks, members of the general public may have mistakenly believed, and will likely continue to believe, that these services are approved or endorsed by, or otherwise affiliated with, AAA.

89. Defendants' unlawful conduct as set forth herein has been and continues to be willful, deliberate, and in bad faith.

90. Defendants' violation of the statute has and will continue to cause irreparable damage to AAA and the public, for which AAA has no adequate remedy at law. Unless enjoined, Defendants will continue to use the AAA Marks, further injuring AAA and confusing the public.

91. On information and belief, Defendants have received substantial revenues and substantial profits as a result of their unlawful conduct, to which Defendants are not entitled, and AAA has also suffered damages as a result of such unlawful conduct for which Defendants are responsible.

92. As a direct, proximate, and foreseeable result of the Defendants' wrongful conduct, as alleged above, AAA has been injured and has lost, and continues to lose, income it otherwise would have received from its customers. AAA is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such unfair business acts or practices.

## PRAYER FOR RELIEF

Wherefore, AAA respectfully seeks the following relief:

1. Enjoin and restrain Defendants, their agents, servants, employees, attorneys, and any and all persons in active concert or participation with any of them, from engaging in any of the following acts:

(a) Using without the authorization of AAA any of AAA's Marks, logos, and trade names, including, but not limited to, the AAA Mark & Design, the designation "AAA," or any other name, logo, or mark that includes the designation "AAA" or that is confusingly or deceptively similar to any of AAA's Marks, logos, and trade names, either alone or in conjunction with other words or symbols, as part of any trademark, service mark, logo, trade name, corporate name, assumed name, domain name, sub-domain name, website, or email address, on or in relation to any goods or services sold or distributed by Defendants, or in any other manner; and

(b) Using the letter "A" or any multiple combination of letters "A" in any form or manner that would tend to identify or associate Defendants or their business or services with AAA, including, without limitation, in the marketing, promotion, advertising, identification, sale or distribution of goods or services, or in any other manner;

2. Require Defendants, pursuant to 15 U.S.C. § 1118, to destroy all literature, signs, labels, prints, packages, wrappers, containers, advertising materials, Internet content, stationary, software, and any other items in their possession or control which contain

COMPLAINT                              18

the infringing designations "AAA" or any term, symbol, or logo confusingly similar to "AAA," either alone or in combination with other words or symbols and to destroy all plates, molds, matrices, masters, and other means in their possession or control with which they can make any of those infringing items;

3. Require Defendants to transfer or cancel their registration for the Infringing Domain Names and any other domain names in their control that contain "AAA";

4. Require Defendants to file with the Court and serve on AAA, within thirty (30) days after entry of an injunction, a report in writing, under oath, setting forth in detail the manner in which Defendants have complied with the injunction;

5. Require Defendants to pay to AAA an amount to be determined to compensate AAA for all damages sustained as a result of Defendants' unlawful conduct described above, plus interest thereon, and require with respect to damages resulting from infringement or dilution of the AAA Marks or from unfair competition under the Lanham Act that such damages be trebled pursuant to 15 U.S.C. § 1117;

6. Require Defendants to account for and pay to AAA all the profits derived by Defendants resulting from its use of the AAA Marks;

7. Requiring Defendants to make restitution and/or disgorge to AAA of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of their unfair business acts or practices;

8. Award AAA punitive damages;

9. Award AAA the costs of this suit and its reasonable attorneys' fees in accordance with 15 U.S.C. § 1117 and California law;

10. Award AAA statutory damages in the amount of $100,000 per Infringing Domain Name pursuant to 15 U.S.C. § 1117(d), or some other amount as the Court considers just;

11. Award prejudgment interest on all liquidated sums; and

12. Award such other and further relief as the Court deems just and proper.

|   |   |   |
|---|---|---|
| 1 | January 20, 2011 | COVINGTON & BURLING LLP |
| 2 | | |
| 3 | | |
| 4 | | By: /s/ Cortlin Lannin |
| 5 | | |
| 6 | | Cortlin H. Lannin |
|   | | Attorneys for Plaintiff THE AMERICAN AUTOMOBILE ASSOCIATION, INC. |

1  January 20, 2011

    COVINGTON & BURLING LLP

    By: *[signature]*

    Cortlin H. Lannin

    Attorneys for Plaintiff THE AMERICAN
    AUTOMOBILE ASSOCIATION, INC.

Of Counsel:
Neil K. Roman, Esq.
Peter D. Saharko, Esq.
Covington & Burling LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2401
Telephone:   (202) 662-6000
Facsimile:    (202) 662-6291
nroman@cov.com
psaharko@cov.com

Leslie N. Harvey (State Bar No. 241203)
   (*admission to C.D. Cal. pending*)
COVINGTON & BURLING LLP
One Front Street
San Francisco, California 94111
Telephone:   (415) 591-6000
Facsimile:    (415) 591-6091
Email:         lharvey@cov.com

COMPLAINT                           20